Good morning. I'm Assistant Federal Defender David Porter and I represent the defendant, Princeton Hummingway. The government's argument on waiver is unsound for three reasons. First, Mr. Hummingway's actions speak louder than his words. He refused to execute the written waiver that Mr. Ballas sent to him on November 10th. And in the excerpts of record at tab 2, at page 2, Mr. Ballas informs the Court that he had sent the form of waiver to Mr. Hummingway, but then at the resentencing I don't know. Was there anything else in the waiver? Was it authorizing him to represent him as counsel? There were two issues there, waiving the right to presence at sentencing and waiving the right to and agreeing that Mr. Ballas could represent him at sentence. And he said he didn't want to agree to that until he met with him, and then he might. That's correct. Okay. That's the phone call on the morning before the hearing. So the reason he didn't return the form, according to the record, was because he didn't want to agree to his being his counsel. That might be a reason. The other reason might be that he didn't want to be transported back to Sacramento. Right. Well, yeah. I mean, that part seemed to be clear, that he didn't want to go back to Sacramento. Yes. He didn't want to appear at the hearing. Well, it's also clear that he didn't want to give up his right to represent himself. And he made that clear to Mr. Ballas. He made that clear to the Court. I think that's right. But he didn't want to give up his right to represent himself, which meant that when he didn't want to come to the hearing, then what? Well, he could participate in other ways by writing to the Court. He could have. He could have. But did he have to come to the hearing? He wasn't required to. And he said he didn't want to, and he didn't. So what's the problem? Well, that the Court did not further inquire about whether the waiver was knowing and voluntary. Well, he refused to participate in the sentencing even when he was there the first time. That's not really accurate. That's what the government says. However, Your Honor, if you look at the supplemental excerpts of record at pages 9 to 10, Mr. Hummingway asked the Court about his notice of appeal. He asked about going pro per on the appeal. And Judge Levy gave him some wise advice about getting counsel for the appeal, which apparently Mr. Hummingway was interested in. He was interested in the appeal, but he didn't want to participate in the sentencing for some reason. When the judge said, you want me not to ask you any questions, he said, yes, I would. Well, that's correct. But the important thing is that his presence at that sentencing was very important. The judge gave him advice. He ended up following that advice. I mean, his presence there wasn't a mere formality. Are you saying it's not a knowing, intelligent, voluntary waiver? Yes. And why? And United States v. Christensen supports that argument. In that case, there was actually a written waiver of the right to jury trial entered into the Court's record. But the Court noted that because of the presence of the fact that the defendant's mental abilities had been called into question in that case, the Court was required to engage in a qualified way. But here we had a competency finding and a determination on appeal that he was competent. Well, that's true, Your Honor. But there certainly was indication. I think the prosecutor will be the first one to agree with this, that there were many indications on the records of Mr. Hummingway's mental disabilities and his ability to and his psychological. That's a good deal by not being there. The time he served was a good part of the deal, Your Honor, but there was also questions Wasn't he concerned, Hummingway concerned, that being in Fort Worth, he was relatively close to the end of his sentence, that if they put him on con air and brought him out to Sacramento, that that might take more time than the time he had left? Wasn't he concerned about that? I don't know whether he was concerned. I don't think there's anything in the record. I think that was speculation on the part of the attorneys about what his motives were, but I don't think that they knew. What are the facts on that? How much at that time he was sitting in Fort Worth and sent the letter, how much time is left on his sentence? Well, I think the resentencing took place on December 1st, and he was scheduled to be released on January 9th. Has he been released? Yes. Is there any likelihood that he would show up if we – if he should prevail in this appeal and get another sentencing hearing to stay away from it at his pleasure? I believe so, Your Honor. I think there's a supervised release violation hearing that's scheduled soon, and I think he is making arrangements to appear at that. Well, he doesn't have much choice about that one, does he? I'm sorry. He doesn't have much choice about that one, does he? No. But, you know, as I said, in the first sentencing, it's – the fact is that while he said to the judge, I don't want to participate, I want to answer your questions, he did in the end have questions, and he did participate. The judge told him about his right to – Basically, you're saying there's enough question about his mental condition to preclude a finding of knowing intelligent involuntariness in the absence of a further examination by the judge? Definitely on this – on this record. Not even further inquiry by the judge. There was really no inquiry at all. Judge Levy just went right to the – to the sentencing. So on the aspect of structural error, there was – Suppose the practical difference is if you had had an actual sentencing and prevailed on the argument, on the guideline argument, then his probation revocation wouldn't be valid because the time would have run? That's correct. That's one of the areas that could have been argued. Another area was the amount of restitution. There was almost a quarter of a million dollars in restitution that was ordered in this case. So that was another aspect of the sentence that he said he got a good deal. That good deal was a good deal in terms of the time served, but there were lots of other aspects of the sentence. Well, the objection on appeal is that he was entitled to a sentence that would have been shorter than time served, right? That's correct. And that would then affect the length of the probation or the parole? Of the supervised release. That's right. The statutory maximum, I believe, was – without the findings that were made – that were not made by the jury, I think the maximum was 10 months. As far as the government structural error argument is, I think it's mistaken because it's so counterfactual. They say, well, what might have – you know, what might have the rights have been under Ameline 3? The fact is that the sentence was vacated by this Court, vacated in its entirety. Yes. I think that was a slight error because the body of the disposition would not – doesn't speak about vacating. It talks just about remanding for – so the Court can look at it and decide what it would have done. And then somebody put at the bottom line, vacated, which it shouldn't have been. But it was. It was. And it – Do you want to save your last two minutes for rebuttal? Sure. I'll just make one very short point. United States v. Taylor, which we cite in the brief, the Court says the district court could have considered the – the resentencing under old Rule 35 and just amended the sentence without the defendant's presence. But in actuality, it was a 2255 motion. The entire sentence was vacated. And the Court held that sentencing the defendant in absentia – resentencing the defendant in absentia was error. I'll answer that. May it please the Court. Thomas Flynn for the United States. I don't think the standard here is knowing involuntarily, although I think he did knowingly and voluntarily waive his right to be there. The rule provides, Rule 43, that you can – perhaps a better word would be forfeiture, but the rule says you waive your right to be there if you don't – if you voluntarily don't show up. To say that you have to voluntarily waive your right to be present at your sentencing would mean that somebody who just doesn't show up is entitled to have himself resentenced later because there's been no inquiry by the Court that he was knowingly and voluntarily waiving his right. The problem with this case is that both the government and Mr. Ballas, who represented him in a very limited capacity, were trying everything they could do to get Mr. Hummingway out of prison by following the rules, and he wasn't cooperating. As early as mid-October, the government had agreed to allow him to time served, and Mr. Ballas was trying to get Mr. Hummingway to follow the rules to do that by either having him appointed as counsel by waiving his right to be there, and Hummingway wasn't cooperative. So by the time that it could be determined that he wasn't going to cooperate, the only alternative for anybody would have been to bring Mr. Hummingway against his will to Sacramento for a proceeding he didn't want to cooperate in that at the time would have required a lengthy trial to establish the facts and would almost certainly have resulted in the same sentence since Judge Levy gave him a sentence at the top of the guidelines. So in order to prevent that, excuse me, it's important to realize that during the entire, almost the entire pre-trial proceedings and during the trial, Mr. Hummingway was in custody because he's homeless. So that if he was brought back to Sacramento, Judge Levy had tried mightily earlier to find him a place to stay, had had little success in doing that. He liked it where he was, in Texas, is it? Yes. And so as I said in the brief, it seems to me, Your Honor, this is a case of no good deed going unpunished. Suppose it does have to be knowing, voluntary, and intelligent, then what? Well, it was. Mr. Porter's arguing that there were signs in the record that he was perhaps incompetent. He's a very eccentric individual, but this Court has already found that he was not only competent in the general sense, but competent to represent himself. He's not incompetent. He knows what he's doing. And when he said, I don't want to come back, he knew what the consequences of that were. He had done that before, at the first sentencing. So it's not like he did not know what he was doing. And as I said, apart from dragging him against his will, up from Texas, for a proceeding that the Court had basically already had before to see if he really wanted to do this, and that would have resulted in his further incarceration, there was nothing the district court could do. Can you comment on the relationship of this to the hearing, I guess, that's scheduled to revoke his revised release? Two weeks. It's set for two weeks from today, Your Honor. But the suggestion was made in argument that perhaps if there's a resentencing, it could impact the length of that stay. I don't understand that. He has already violated his supervised release. But if his sentence was not time served, but was it 10 months he asked for, then would the supervised release, then it would run from the sentence that was imposed. I don't know that that's correct. I mean, yes, it would run from the one that was imposed, not the one that should have been imposed. Correct. Well, no, the judge said today, the Court said, you know, I made a mistake giving him time served. Bring him in, and the sentence he really was entitled to was 10 months, which is what he asked for. I don't think he asked for 10 months. Well, that's what it said on appeal, that uh... I'm confused. Hummingway never asked for anything. Assume it is 10 months. Yes. And then Judge Levy said, you know, that was right. That's what the guidelines really called for, the 10 months. So even though I'm not bound, that's what I'm given. And so then the supervised release should have run from that. Would this parole violation or supervised release violence be within that period? I believe so. I believe he got, I could be mistaken, I believe he got three years supervised release, and this all took place in 2004. So it wouldn't make any difference. I don't think so. Thank you. Thank you, Your Honor. First of all, the waiver goes only to the presence. The waiver did not go to his request that he continue to represent himself. Secondly, the defendant, the importance of having a defendant at sentencing is so that he knows exactly what the sentence is. And here, Judge Levy reimposed the same conditions, but there was a possibility that he might not have. It's important for the – it's crucial for the defendant to be personally present at the sentencing. Well, he knew that when he decided to boycott the process, didn't he? Well, he said he didn't want to be present. He said he wanted to continue to represent himself, and he could have done so at a hearing and through written submissions. So I – It seems like we're elevating form over substance here and taking off without a payload, bringing back in here and telling a story that he doesn't want to hear. What is going to be accomplished by it? Well, I think what would be accomplished is that the defendant would be personally present and be able to affect the sentence that the judge potentially imposes upon him. Judge Reinhart, in the Hayes opinion, stated eloquently what the defendant could do in a felony case about his presence at sentencing. He can testify. He can communicate with counsel. He can – Convince the judge to give him a higher sentence. The most important part of the trial is – Well, sometimes you are your worst enemy, Your Honor. Okay. Thank you. The case case argument will be submitted.
judges: Goodwin, Reinhardt, Hawkins